## EISENMAN *v.* THE STATE.

LIQUOR LAW.—*Sale to be Drank on Premises.—Information.*—In an affidavit or information for selling intoxicating liquor to be drank upon the premises where sold, under the act of February 27th, 1873, it is not necessary to allege that the liquor was drank on the premises, or that it was drank anywhere.

SAME.—Where there is an enclosure in the rear of, and in view of, a place where intoxicating liquors are sold, where persons can drink under the protection of a high fence, and where they are in the habit of drinking, and where liquor sold is delivered in vessels, and drank from glasses furnished by the person making the sale, and carried when bought in the

direction of the enclosure, and the empty vessels are returned, it may be inferred that the liquor was sold to be drank on the premises, though the persons buying were told it must not be drank on the premises.

SAME.—Where one witness, who drank of liquor sold, testifies that in his opinion the liquor was intoxicating, and that it made him drunk, it will authorize a finding that the liquor was intoxicating.

From the Decatur Circuit Court.

*C. Ewing* and *J. K. Ewing,* for appellant.

*C. A. Buskirk,* Attorney General, *R. D. Doyle,* and *O. B. Scobey,* Prosecuting Attorney, for the State.

DOWNEY, J.—Prosecution against the appellant under the act of February 27th, 1873, for selling intoxicating liquor to one Carter Loyd, to be drank in and upon the premises where. sold, without a permit, commenced before a justice of the peace. There was a conviction before the justice of the peace, and an appeal by the defendant to the circuit court.

The prosecution was upon an affidavit, a motion to quash which was made in the circuit court, and overruled.

In the circuit court, the cause was tried by the court, and the defendant was again found guilty. A new trial was asked by the defendant, on the grounds :

1. That the finding of the court was contrary to the law ; and,

2. It was contrary to the evidence.

This motion was overruled, and sentence was pronounced against the defendant.

He has assigned for error here :

1. Overruling his motion to quash the affidavit.

2. Refusing to grant a new trial ; and,

3. Rendering final judgment against the defendant.

The objection urged against the affidavit is, that it does not allege that the liquor was drank on the premises where it was sold. The prohibition is against selling the intoxicating liquor "to be drunk in, upon," etc., without a permit ; sec. 1 of the act. It is not necessary to the completion of the offence, that the liquor shall be drank on the premises, or that it shall be drank anywhere. The offence consists in selling it to be drank

on the premises, without the required permit. The affidavit alleges a sale of the liquor to be drank on the premises, without a permit, and is, therefore, sufficient.

Under the second assignment of error it is insisted, that the evidence does not show that the liquor was sold to be drank on the premises where sold. We will examine the evidence, and see what it does show. The liquor charged to have been sold was beer.

Carter Loyd testified as follows: " I never bought any liquor of defendant—no wine, nor beer, nor whisky," etc.

William H. Isgrigg: " I saw Carter Loyd buy liquor of defendant, some two or three months ago, in Decatur county, Indiana; it was beer; beer is intoxicating; it made me drunk on that occasion; he drank the liquor inside the fence in the back lot of the defendant's premises; about one-half of the back lot is fenced off to itself, and the beer was drank in the part of the lot farthest back from the saloon; I saw the liquor paid for, but do not know how much; Carter Loyd, Jesse West, and I were together; Loyd bought the liquor of defendant, and we all drank it in defendant's back yard; the beer was taken out into the back yard, and the vessel returned; I took the glasses out of the saloon, and drank out of them; I was at the back door when the beer was purchased by Loyd; there was nothing said about borrowing the quart cup and glasses; defendant Eisenman told us to go off the premises, and we said we would, but did not; I have seen other persons drinking on that lot where we drank; there is a small low fence at the back part of the lot; we drank about eighty feet from the saloon, and in sight of it; there is a high fence that conceals the place; we took the glasses back, and gave them and the quart cup to the defendant."

Nathan Withers: " I have seen persons drinking in defendant's back lot several times, in the same place spoken of by William H. Isgrigg; I have seen them come back from the place, with empty beer-glasses, enclosed with a fence six feet high, and next to the livery stable; this place has been there

several years; this place is about one hundred feet back of the saloon."

James T. Gillam: "Saw defendant sell a quart of beer to two men, in a quart cup, and furnish them with glasses and the vessel, but told them to go off the premises to drink it."

The defendant testified in his own behalf, as follows: "I do not recollect of selling beer to Loyd; have no recollection about it; it is my universal custom to tell every man I sell to to take it off my premises; I never permitted any one to drink on my lot, and never knew that Carter Loyd and Isgrigg drank there; I have employed a man busy days to see that none drank on my premises; when I furnish the vessels and the beer and glasses, I generally tell them to go off my premises, most generally follow them to the door."

Some parts of this evidence tend to show that the defendant did not sell the liquor to be drank on his premises, and other parts tend the other way. The statements of the defendant, made to purchasers, that they must not drink on his premises, are in his favor. But the fact that he had a place in the rear of his saloon where customers could drink under the protection of a high fence, and where, we think, he must have known they were in the habit of drinking; that he did not deliver the liquor to the purchasers in their own vessels to be taken away, but allowed them to take it out into his lot in his vessels, and use his glasses in drinking it, are circumstances from which we think the court was justified in finding that he sold the liquor to be drank on his premises, notwithstanding his formal request that that should not be done. The place where the liquor was drank was in view of the saloon; the defendant knew that the liquor was taken out at the rear of his saloon, in his vessels, and that the vessels were returned to him empty. This was done repeatedly. On this point we ought not to disturb the judgment of the circuit court.

It is claimed also, that the evidence does not show beyond a reasonable doubt a sale of liquor. This was a question for the jury. The evidence was conflicting. It is not for us to

say which of the witnesses the jury ought to have believed, and which disbelieved. Isgrigg swears to a sale.

It is also suggested, that the liquor sold is not shown by the evidence to have been intoxicating liquor, within the rule of this court as laid down in *Klare* v. *The State*, 43 Ind. 483. In this case, one of the witnesses who drank of the liquor, testified that it was beer, and that it made him drunk. We think this test, in connection with the opinion of the witness, should be regarded as settling the question.

The third assignment of error presents no question for decision.

The judgment is affirmed, with costs.